UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT FREMONT EVANS,

        Petitioner,

v.                                                 CASE NO. 05-CV-70900-DT
                                                 HONORABLE VICTORIA A. ROBERTS

JAN TROMBLEY,

        Respondent.
_____/

## OPINION AND ORDER DENYING HABEAS CORPUS PETITION

Petitioner Robert Fremont Evans has filed a *pro se* habeas corpus petition under 28 U.S.C. § 2254. The habeas petition attacks Petitioner's plea-based conviction for first-degree criminal sexual conduct. Also pending before the Court is Petitioner's motion to withdraw his no-contest plea. Respondent urges the Court in a responsive pleading to deny the habeas petition. The Court has concluded for reasons given below that Petitioner's claim lacks merit and that the habeas petition must be denied.

### I. Background

Petitioner was charged in Manistee County, Michigan with two counts of first-degree criminal sexual conduct. The charges arose from allegations that Petitioner abducted and raped a fourteen-year-old female acquaintance while choking her and holding a screwdriver to her neck.[1]

---

[1] As explained in Petitioner's state appellate brief,

> [t]he factual basis for the plea was supplied by a police report describing the complainant's version of the incident, as well as a laboratory report showing that Mr. Evans was almost certainly the source of semen found in the complainant's vagina. The police report reflected the fourteen-year-old complainant's allegation that Mr. Evans, a family friend, had offered her a ride home. She had accepted. Telling her he had to run some errands, Mr. Evans drove her to the dead-end of a

Petitioner was charged in a supplemental information with being a habitual offender. On October 25, 2002, he pleaded no contest to one count of first-degree criminal sexual conduct, MICH. COMP. LAWS § 750.520b(1)(e) (sexual penetration with a person 13 to 16 years of age while armed with a weapon). In return, the prosecutor agreed to dismiss the second count of first-degree criminal sexual conduct and the habitual offender charge. The prosecutor also promised to recommend a sentence of thirty-one to forty-seven years in prison.[2]

At the sentencing, Petitioner moved to withdraw his no-contest plea. The trial court denied Petitioner's oral motion and sentenced Petitioner to imprisonment for thirty-one to forty-seven years. Petitioner raised his habeas claim in the Michigan Court of Appeals, which denied leave to appeal "for lack of merit in the grounds presented." *See People v. Evans*, No. 252570 (Mich. Ct. App. Jan. 22, 2004). On June 30, 2004, the Michigan Supreme Court denied leave to appeal because it was not persuaded that the question presented should be reviewed. *See People*

---

dirt road, held a screwdriver to her neck, bound her wrists and feet together, and penetrated her vagina with his finger. He then choked her with his shirt until she passed out. When she came to, he gave her a can of Sprite and six or seven pills, telling her they were Prozac. She swallowed them. He drove some more, then stopped on another dirt road and penetrated her again digitally, then with his penis. When done, he drove some more, then repeated the penetrations on yet another dirt road. Mr. Evans also kissed her, told her that he loved her, complimented [her] on her figure, rubbed her back, and kissed her breasts. Whenever she asked him to let her go, he replied that he was not sure he could trust her. She assured him that he could, and eventually he dropped her off near her home. She immediately told her mother what happened, and her mother called the police.

*People v. Evans*, Mich. Ct. App. No. 252570, Application for Leave to Appeal, at 1-2 (footnotes and citation to the record omitted).

[2] Defense counsel estimated that Petitioner had a greater chance of being released under the sentencing agreement than if he were convicted following a trial and sentenced under the sentencing guidelines of 570 months. (Tr. Oct. 25, 2002, at 4-6.)

*v. Evans*, 470 Mich. 887; 682 N.W.2d 91 (2004) (table).

Petitioner signed his habeas corpus petition on February 25, 2005. The sole ground for relief and supporting facts read:

> Petitioner was pressured into pleading no-contest to charges of which he was innocent[.] [T]herefore the trial court abused its discretion by rejecting his motion to withdraw [the] plea.
>
> Robert Evans gave fair and just reasons for withdrawing his no-contest plea. He did not supply a factual basis for the plea on which the prosecutor depended. Robert Evans asserted his actual innocence. Robert Evans explained to the judge he had felt pressured into pleading. He contended that the complainant was part of a blackmail scheme.

Pet. at unnumbered page 4.

## II.  Standard of Review

Petitioner is entitled to the writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but

unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. "Avoiding these pitfalls does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002) (*per curiam* opinion) (emphasis in original). "Furthermore, state findings of fact are presumed to be correct unless the defendant can rebut the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1)." *Baze v. Parker*, 371 F.3d 310, 318 (6th Cir. 2004), *cert. denied*, __ U.S. __, 125 S. Ct. 1670 (2005).

### III. Discussion

#### A. The State Law Claim

The habeas petition alleges that Petitioner was pressured into pleading no contest and that the trial court abused its discretion by summarily rejecting Petitioner's motion to withdraw the no-contest plea. Petitioner argues on the basis of state law that he gave fair and just reasons for withdrawing his plea and that he was entitled to withdraw his plea unless the prosecution demonstrated substantial prejudice as a result of relying on the plea.

Petitioner's claim has no merit, because he had no constitutional right to withdraw his no- contest  plea. *United States ex rel. Scott v. Mancusi*, 429 F.2d 104, 109 (2nd Cir.1970); *Freeman v. Muncy*, 748 F. Supp. 423, 429 (E.D. Va. 1990) (citing *Siers  v. Ryan*, 773 F.2d 37 (3d Cir. 1985)).

> Unless the pleas violated a clearly-established constitutional right, the allowance of withdrawal of no contest pleas is discretionary with the trial court. *See Scott*, 429 F.2d at 109; [*People v.*] *Bencheck*, 360 Mich. [430, 432; 104 N.W.2d 191 (1960)]; [*People v.*] *Harris*, 224 Mich. App. [130, 131; 568 N.W.2d 149 (1997)]. Moreover, a trial court's abuse of discretion generally is not a basis for habeas

corpus relief. *Sinistaj v. Burt*, 66 F.3d 804, 808 (6th Cir.1995). As the United States Court of Appeals for the Seventh Circuit has explained,

> [q]uestions of degree--like questions about the proper use of 'discretion'-- lack answers to which the labels 'right' and 'wrong' may be attached. When the subject is painted in shades of grey, rather than in contrasting colors, a responsible, thoughtful answer reached after a full opportunity to litigate is adequate to support the judgment.
>
> *Lindh v. Murphy*, 96 F.3d 856, 871 (7th Cir. 1996), *reversed on other grounds*, 521 U.S. 320 (1997); *see also* 28 U.S.C. § 2254(a) (authorizing issuance of the writ of habeas corpus only for violations of federal law).

*Hoffman v. Jones*, 159 F. Supp. 2d 648, 655 (E.D. Mich. 2001) (Lawson, J.), *aff'd*, 53 Fed. Appx. 342 (6th Cir. 2002), *cert. denied*, 540 U.S. 1193 (2004).

Neither the habeas petition, nor Petitioner's state court brief, allege a constitutional violation, and the alleged violation of state law is not a basis for habeas corpus relief. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Pulley v. Harris*, 465 U.S. 37, 41 (1984). A federal court may grant the writ of habeas corpus only if the petitioner is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). Consequently, Petitioner has no right to habeas corpus relief on the ground that the trial court violated state law and abused its discretion when denying Petitioner's request to withdraw his plea.

### B. The Constitutional Argument

Petitioner alleges in his pending motion that his no-contest plea was not knowing and voluntary due to medications he was taking at the time. Even if the Court were to construe the

habeas petition and pending motion to allege a constitutional violation, it is clear that Petitioner's constitutional rights were not violated. The reasons follow.

A guilty or no-contest plea must be a voluntary, knowing, and intelligent act "done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970). Courts look to all the relevant circumstances when determining whether a plea was entered voluntarily and intelligently. *Id.* at 749. Federal habeas courts cannot ignore the possibility that a defendant's representations at the time of his plea were the product of misunderstanding, duress, or misrepresentation by others so as to make the plea a constitutionally inadequate basis for imprisonment. *Blackledge v. Allison*, 431 U.S. 63, 75 (1977). "A plea may be involuntary if the defendant does not understand the nature of the constitutional rights he is waiving, or unintelligent if the defendant does not understand the charge against him." *United States v. McGlocklin*, 8 F.3d 1037, 1047 (6th Cir. 1993) (citing *Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976)).

However,

> [t]he rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision. A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action.

*Brady*, 397 U.S. at 757. Furthermore, "[s]olemn declarations in open court carry a strong presumption of verity," *Blackledge*, 431 U.S. at 74, and a trial court's factual findings, including credibility determinations, are entitled to special deference. 28 U.S.C. § 2254(e)(1); *Patton v. Yount*, 467 U.S. 1025, 1038 (1984). "An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is

unwilling or unable to admit his participation in the acts constituting the crime." *North Carolina v. Alford*, 400 U.S. 25, 37 (1970).

### 1. The Plea

Petitioner was almost forty-six years old when he pleaded no contest. He stated in response to the trial court's questions that he understood the offense to which he was pleading, the maximum possible sentence, and that his plea had the force and effect of a guilty plea. The colloquy then continued as follows:

> THE COURT: [Y]ou understand that we have a trial in this matter that is scheduled to commence this coming Tuesday, that is to say October 29th? This is Friday, October 25th.
>
> [Petitioner]: Yes.
>
> THE COURT: And Mr. Evans, I want you to -- I want to tell you that if you don't want to go through with this plea taking at this time, I'm not -- I don't want to force you into anything.
>
> You understand that?
>
> [Petitioner]: Yes.
>
> THE COURT: Okay. I can have you back here Monday and ask you if you want to do it then if you want to.
>
> Do you understand that?
>
> [PETITIONER]: Yes.
>
> THE COURT: Would you like me to proceed?
>
> [PETITIONER]: Yes, Your Honor.

(Tr. Oct. 25, 2002, at 9-10.)

Petitioner went on to say that he understood the rights he was waiving by pleading no contest, that he understood the plea agreement, and that no one had promised him anything

beyond the plea agreement or threatened him to make him plead guilty. He claimed that it was his own choice to plead no contest. He explained that he was taking medication for depression, stress, a stomach problem, and back pain, but that the medication was not affecting his judgment or his ability to understand the proceedings. (*Id*. at 10-15.) The trial court concluded that Petitioner's plea was knowing, intelligent, and voluntary. (*Id*. at 16.)

### 2. The Sentence

At the sentencing on December 9, 2002, Petitioner informed the trial court that he wanted to withdraw his plea. He claimed that he had been informed he would be pleading no contest to kidnapping and that the charge was changed when he arrived in court. He said that he had been pressured all his life and decided that it was time to stand on his own two feet and stop letting people push him into things. He gave the following additional reasons for wanting to withdraw his plea: (1) bias and prejudice against him on the basis of his criminal record; (2) the trial court's partiality as manifested in its handling of Petitioner's divorce settlement and its signing of personal protection orders against Petitioner; (3) blackmail by the parties; and (4) a corrupt justice system. He stated that he wanted to go to trial and let the truth come out. He also implied that he was innocent and that the victim forced him into a sexual relationship. When the trial court reminded Petitioner of the plea proceeding where the court had offered Petitioner a trial and Petitioner had said that he wanted to proceed with the plea, Petitioner responded, "I was in shock." (Tr. Dec. 9, 2002, at 4-15, 55, 68.)

The prosecutor admitted at the sentencing that he might be prejudiced toward someone in Petitioner's position, but he maintained that the charges were "justly filed" (*Id.* at 50-51), and the trial court implied that it was not biased against Petitioner, but just doing its job. (*Id*. at 5-9, 15-

21.) Petitioner's contention that the justice system was corrupt constituted his personal viewpoint. The problems that he alluded to were not indicative of corruption. There also was no basis for believing that Petitioner was innocent and the victim in this case. The police report, lab reports, and photographs apparently indicated that the victim had marks on her body consistent with her testimony regarding tape being used on her wrists and face. In addition, the person who deposited semen in the victim's vagina matched DNA evidence obtained from Petitioner. The probability of another Caucasian male depositing the semen was one in 548.7 quadrillion. (Tr. Oct. 25, 2002, at 7 and 17; Tr. Dec. 9, 2002, at 27 and 51.)

### IV. Conclusion

Petitioner's allegations that he was pressured into pleading guilty and that his plea was not knowing and voluntary are belied by his comments at the plea. He claimed that he wanted to plead no contest, that he was not threatened or forced to enter the plea, and that he knew what he was doing and was not affected by medication. He also claimed to understand the rights he was waiving and the charges against him. The record discloses that Petitioner's plea was voluntary and intelligent and that the trial court did not deprive him of a federal constitutional right when it denied Petitioner's motion to withdraw his plea. Therefore, the state appellate court's conclusion that Petitioner's claim lacked merit did not result in a decision that was contrary to, or an unreasonable application of, Supreme Court precedent. The application for a writ of habeas corpus [Doc. #1, Mar. 8, 2005] and Petitioner's motion to withdraw his plea [Doc. #7, Nov. 2, 2005] are DENIED.

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  December 7, 2005

| |
|---|
| The undersigned certifies that a copy of this document was served on the attorneys of record and petitioner  by electronic means or U.S. Mail on December 7, 2005.<br><br>s/Carol A. Pinegar<br>Deputy Clerk |